IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERARDO HERRERA,

    Plaintiff,

v.                                                           No. CV 20-142 CG/GBW

BERKLEY REGIONAL INSURANCE
COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Berkley Regional Insurance Company's *Motion to Exclude Plaintiff's Expert Brian McDonald* (the "Motion"), (Doc. 73), filed November 13, 2020; Plaintiff Gerardo Herrera's *Response to Defendant's Motion to Exclude Plaintiff's Expert Brian McDonald* (the "Response"), (Doc. 79), filed November 30, 2020; and Defendant's *Reply in Support of Motion to Exclude Plaintiff's Expert Brian McDonald* (the "Reply"), (Doc. 83), filed December 15, 2020. In accordance with Federal Rule of Civil Procedure 73(b), all parties have consented to the Undersigned to conduct dispositive proceedings and issue a final judgment in this matter. *See* (Doc. 12); 28 U.S.C. § 636(c). Further, the parties did not request a hearing on this Motion. *See* (Doc. 73); (Doc. 79); (Doc. 83); (Doc. 84). Having reviewed the parties' filings and the relevant law, the Court finds the Motion is not well-taken and shall be **DENIED**.

    **I.**     **Background**

Mr. Herrera has sued his former employer's insurer, Defendant Berkley Regional Insurance Company, for injuries he sustained in an automobile accident on January 10,

2018. (Doc. 73 at 1); *see also generally* (Doc. 2). Mr. Herrera alleges that while he occupied a vehicle owned by his employer, another driver, Joel Mendoza, rear-ended the vehicle. (Doc. 73 at 1). Mr. Herrera alleges he suffered "serious and disabling" personal injuries from the accident. (Doc. 2 at 6).

The other driver, Mr. Mendoza, was allegedly uninsured at the time of the accident, and thus Mr. Herrera sought to recover damages from Defendant. (Doc. 73 at 1); *see also* (Doc. 2 at 6-7). Mr. Herrera alleges that, at the time of the accident, Defendant insured the vehicle and any employees occupying it for damages caused by the negligence of underinsured drivers. (Doc 2 at 6). Mr. Herrera further alleges Defendant disputed the amount Mr. Herrera sought to recover under the uninsured motorist provision of the insurance policy, leading to this action. (Doc. 73 at 1).

On January 1, 2020, Mr. Herrera filed a *Complaint to Recover Insurance Proceeds and Damages for Unfair Claims Practices* (the "Complaint"), (Doc. 2 at 6-8), in the Fifth Judicial District Court of Lea County. The Complaint alleges Defendant violated the New Mexico Unfair Claims Practices Act (the "UCPA"), NMSA 1978, § 59A-16-20 (2009), by (1) "[f]ailing to settle an insured's claims promptly where liability has become apparent"; (2) "[f]ailing to attempt [] in good faith to effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear"; (3) [c]ompelling an insure[d] to institute litigation to recover amounts due under the policy by failing to offer any settlement; and (4) [f]ailing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a settlement." *Id.* at 7. The Complaint seeks the amounts due under the insurance policy, damages for Defendant's violation of the UCPA, and attorney fees and costs. *Id.* at 8. On February 19, 2020,

Defendant removed this action from the Fifth Judicial District Court of Lea County to the United States District Court for the District of New Mexico. (Doc. 2).

Mr. Herrera has since retained Dr. Brian McDonald, Ph.D., as an expert economist to testify at trial about the economic and non-economic value of Mr. Herrera's life. *See* (Doc. 34 at 1); (Doc. 13 at 7); (Doc. 79 at 1). On June 4, 2020, Dr. McDonald issued a report (the "Report"), which, in relevant part, proposes that Dr. McDonald will testify that Mr. Herrera's total lost earning capacity is $484,779, his total loss of household services is $387,675, and he will testify about Mr. Herrera's value of life damages. (Doc. 73 at 7-17).

**II.    Analysis**

Defendant now seeks to exclude the expert testimony of Dr. McDonald, arguing that his opinion fails to satisfy the Federal Rules of Evidence. (Doc. 73 at 1, 3-4). Specifically, Defendant contends Dr. McDonald's loss of household services calculation relies on inaccurate information about Mr. Herrera's family status, and his lost earning capacity calculation relies on inaccurate information about Mr. Herrera's actual earnings, his disability, and his ability to work. *Id.* at 2-3. In response, Mr. Herrera acknowledges one inaccuracy in Dr. McDonald's Report but otherwise disputes that Dr. McDonald relied on other inaccurate information. *See generally* (Doc. 79 at 2-4). Mr. Herrera contends, in any event, that Defendant's argument concerns the weight a jury will decide to afford Dr. McDonald's testimony rather than its admissibility. (Doc. 79 at 4-5). For these reasons, Mr. Herrera requests the Court deny Defendant's Motion.

**A. Standard of Review**

Federal Rule of Evidence 702 permits an expert witness to "testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized

3

knowledge will help the trier of fact to understand evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 (2011).

In applying this rule, the Court performs a two-step "gatekeeping" function. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)); *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine that the expert is "qualified" by "knowledge, skill, experience, training, or education." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (citing Fed. R. Evid. 702). As a component of the "qualification" requirement, the expert's testimony must also be "relevant" to the issues before the Court. *Daubert*, 509 U.S. at 591. Second, the Court must determine whether the expert's opinions are "reliable" under the principles and factors set forth in *Daubert*, 509 U.S. at 593-94. "[T]here are many different kinds of experts," though, "and many kinds of expertise." *Kumho Tire*, 526 U.S. at 150. The *Daubert* factors are thus not definitive and some factors may not be pertinent to assessing the reliability of a non-scientific expert. *Id.*

Additionally, the Court assesses several non-exclusive factors to determine whether the expert's testimony will assist the jury, including: (1) whether the testimony is relevant; (2) whether it is within the jurors' common knowledge and experience; (3) whether there is a sufficient factual basis and reliable application of the methodology to the facts; and (4) whether it will usurp the jury's role of evaluating a witness's credibility. *Id.*; *see also Daubert*, 509 U.S. 591, 593.

**B. Reliability of Dr. McDonald's Loss of Household Services Calculation**

First, Defendant argues the Court should exclude Dr. McDonald from testifying at trial because his calculation of Mr. Herrera's household services relies on inaccurate information. *See* (Doc. 73). Specifically, Defendant alleges Dr. McDonald incorrectly stated in the Report that Mr. Herrera "is a single man with no children," when, in fact, Mr. Herrera is married with children. *Id.* at 2. Mr. Herrera acknowledges this inaccuracy but contends the correct information would not change Dr. McDonald's calculation for loss of household services because Mr. Herrera's children are adults, and he has been effectively separated from his wife for over twenty years. (Doc. 79 at 4).

Defendant does not challenge that Dr. McDonald is qualified by knowledge, skill, experience, training, or education to testify about loss of household services. *See generally* (Doc. 73); (Doc 83); *see also LifeWise Master Funding*, 374 F.3d at 928. Upon the Court's review of Dr. McDonald's *curriculum vitae*, it appears he is indeed qualified in this area, and that his proposed testimony regarding loss of household services is relevant to the issue of damages. *See* (Doc. 79 at 23-30); *see also* Fed. R. Civ. P. 702(a); *Daubert* 509 U.S. at 591.

Moreover, Dr. McDonald's calculation of loss of household services appears to rely on sound methodology. *See* (Doc. 73 at 8-9); *see also* Fed. R. Civ. P. 702(c)-(d). Dr. McDonald used "*The Dollar Value of a Day: 2018 Dollar Valuation*, Expectancy Data, Shawnee Mission, Kansas, 2019, Tables 262 and 304," to determine the number of hours Mr. Herrera will expend performing household services per week and the hourly value of those services. *Id.* at 8-9. Dr. McDonald then adjusted each yearly amount, assuming an annual increase "at the same rate as average hourly earnings in the U.S. according to the U.S. Bureau of Labor Statistics," to arrive at an overall amount

5

from the date of Mr. Herrera's injury through his actuarial life expectancy age of 79. *Id.* at 8, n.8; *see also id.*, n.4.

Still, Defendant raises legitimate concerns about factual inaccuracies in the Report. Dr. McDonald states in his Report that Mr. Herrera "is single" and "has no children[.]" (Doc. 73 at 7). Dr. McDonald then relies on this information in calculating Mr. Herrera's total household services at $387,675, explaining "[t]his assumes that [Mr. Herrera] would have performed the household services of the average single male with no minor children." *Id.* at 8. The parties, as well as Dr. McDonald, agree that this statement regarding Mr. Herrera's family status is incorrect. (Doc. 73 at 2); (Doc. 79 at 4, 22). The Court believes, however, that this type of inaccuracy does not justify the exclusion of Dr. McDonald's testimony.

As Dr. McDonald clarified in a follow-up letter he sent to Mr. Herrera's counsel, his misstatement about Mr. Herrera's family status did not render incorrect his calculation of Mr. Herrera's lost household services. (Doc. 79 at 22). Dr. McDonald explained that Mr. Herrera and his wife, who resides in Mexico, have been separated "for a long time" and "they have no minor children." *Id.* Mr. Herrera confirmed as much in his deposition testimony. (Doc. 73 at 19). In other words, as Dr. McDonald further explained, his calculation "would be the same for a married man without minor children, living apart from his wife, as a single man without minor children." *Id.* This satisfies the Court that the inaccuracy about Mr. Herrera's family status is *de minimis*.

As such, Defendant has failed to show that the Court should exclude Dr. McDonald from testifying at trial on the basis of his misstatement about Mr. Herrera's family status. *See Chavez-Acosta v. Southwest Cheese Co.*, L.L.C., 2:12-cv-353 JAP/CG, 2013 WL 12040733, *3 (D.N.M. Aug. 5, 2013) (denying motion to exclude

expert's report that relied on some incorrect employment information). The inaccuracy concerns the weight a jury ultimately decides to afford Dr. McDonald's testimony, not the admissibility of his testimony, and thus Defendant may identify any inaccuracies in Dr. McDonald's Report during cross-examination or with any rebuttal testimony.

### C. Reliability of Dr. McDonald's Lost Earning Capacity Calculation

Defendant next urges the Court to exclude Dr. McDonald from testifying at trial because his calculations of Mr. Herrera's lost earning capacity are unreliable. (Doc. 73 at 4-5). Defendant contends that Dr. McDonald used the date of injury as the starting point for calculating Mr. Herrera's lost earning capacity yet failed to include his earnings for the three-month period he continued to work after his injury. *Id.* at 5; (Doc. 83 at 4). Defendant further argues that Dr. McDonald based his calculation on an incorrect assertion that Mr. Herrera is totally disabled and totally unable to work. (Doc. 73 at 4-5). Defendant argues that, as a result, Dr. McDonald's calculation of lost earning capacity is unreliable. *Id.* at 5; (Doc. 83 at 4).

Mr. Herrera disputes Defendant's characterization of the process by which Dr. McDonald calculated Mr. Herrera's lost earning capacity. (Doc. 79 at 2-4). Mr. Herrera argues that Dr. McDonald's role as an expert is to opine on the total *possible* amount of lost earning capacity, not the *actual* loss. *Id.* at 3. As such, the issue of whether Mr. Herrera continued to work after his injury is irrelevant to Dr. McDonald's opinion regarding total lost earning capacity. *Id.* Evidence of the actual amount lost, including any work Mr. Herrera continued to perform after his injury, would be presented at trial for the jury to determine actual lost earning capacity. *Id.* Mr. Herrera further argues, similarly, that Dr. McDonald does not opine on the actual extent of Mr. Herrera's disability or the actual extent to which he can work, but rather opines on what total

7

disability and total inability to work would amount to for Mr. Herrera. *Id.* In other words, Dr. McDonald leaves to the jury the role of determining the actual extent of Mr. Herrera's disability and the actual extent to which he can work. *Id.*

In its Reply, Defendant argues that Dr. McDonald's failure to account for Mr. Herrera's actual post-injury earnings, the actual extent of his disability, and the actual extent to which he can work in the future, renders his opinion inaccurate and irrelevant. (Doc. 83 at 3-5). As such, Defendant contends, Dr. McDonald's "estimates of damages" are "based entirely upon statistics and assumptions," which courts in this district have found to be "too remote and speculative." *Id.* at 3 (quoting *Rivera v. Volvo Cars of N. Am., LLC*, No. 1:13-cv-397 KG/KBM, 2015 WL 11118067, at *2 (D.N.M. June 8, 2015)).

Defendant did not dispute Dr. McDonald's qualifications to testify about loss of household services above, nor does Defendant dispute his qualifications to testify about lost earning capacity. *See LifeWise Master Funding*, 374 F.3d at 928. Indeed, upon review of Dr. McDonald's *curriculum vitae*, he appears qualified to testify about lost earning capacity, and his proposed testimony regarding lost earning capacity is relevant to the issue of damages. *See* (Doc. 79 at 23-30); *see also* Fed. R. Civ. P. 702(a); *Daubert* 509 U.S. at 591.

Further, the Report appears to apply sound methodology in determining lost earning capacity. *See* (Doc. 73 at 7-8). Dr. McDonald begins by noting that Mr. Herrera's "past work experience was in heavy labor, farm and dairy work, and as a pipeline laborer." *Id.* at 7. Dr. McDonald then uses an average of Mr. Herrera's weekly wages for his last 26 weeks of employment at D&D Pipeline Construction Company to project his annual pre-injury earning capacity. *Id.* From that, Dr. McDonald assumes an increase in Mr. Herrera's hourly rate between 2018 and 2020 at the same rate as the

national average. *Id.* Including Mr. Herrera's projected employer-paid fringe benefits, Dr. McDonald calculates Mr. Herrera's total lost earning capacity at $484,779. *Id.*

The Court will next address Defendant's argument that Dr. McDonald failed to include Mr. Herrera's post-injury earnings in his calculation of total lost earnings. Dr. McDonald acknowledges in the Report that Mr. Herrera "was able to return to work at some point [after the date of injury] with accommodations by his employer." (Doc. 73 at 8). Dr. McDonald expanded on this point in his deposition. (Doc. 73 at 23-24). When Defendant's counsel questioned Dr. McDonald about Mr. Herrera's post-injury earnings for the three-month period following the date of injury and his alleged earnings in early 2020, Dr. McDonald explained he would adjust his calculation accordingly upon a showing at trial of any actual post-injury earnings. *Id.*

The Court agrees with Mr. Herrera that it would be improper for Dr. McDonald to determine and opine upon Mr. Herrera's *actual* post-injury earnings. After all, Mr. Herrera's actual lost earning capacity is the relevant fact in issue here, which a jury would have to decide based on the evidence presented at trial, including any evidence of actual post-injury earnings. Dr. McDonald's role as an expert witness would necessarily be to aid the jury in understanding this fact in issue, not in determining it for the jury. *See U.S. v. Muldrow*, 19 F.3d 1332, 1337 (10th Cir. 1994). Put differently, *actual* lost earning capacity falls outside Dr. McDonald's role as an expert and more properly within the jury's ambit as the trier of fact. The Court is therefore satisfied that on this issue Dr. McDonald's opinion regarding total lost earning capacity passes muster under Rule 702. *See* Fed. R. Evid. 702.

Finally, the Court will address Defendant's contention that Dr. McDonald based his lost earning capacity calculation on an incorrect assertion that Mr. Herrera is totally

9

disabled and totally unable to work. In his Report, Dr. McDonald calculates Mr. Herrera's total earning capacity at $484,779 from the date of injury through his expected work life. (Doc. 73 at 7). Dr. McDonald explains that his calculation amount "would be [Mr. Herrera's] loss of earning capacity, *if* he is totally and permanently disabled from competitive employment." *Id.* at 8 (emphasis added). As the Court understands it, similar to the previous analysis, Dr. McDonald does not opine in the Report on whether Mr. Herrera is *in fact* totally disabled or totally unable to work. Rather, he arrives at his calculation for lost earnings by *assuming* total disability and total inability to work. *See* Doc. 73 at 23 (Dr. McDonald stating during his deposition, "[W]e've talked about all the assumptions that went into [the Report]"). He appears to do this for the purpose of establishing a ceiling—the highest possible amount Mr. Herrera could stand to lose in earning capacity, which he calculates at $484,779. Conversely, the floor would be zero—no lost earning capacity assuming no disability and total ability to work. Then, as Dr. McDonald further indicates in the Report, it becomes the role of the jury to decide, based on the facts presented at trial, where between the ceiling and the floor Mr. Herrera's actual lost earning capacity falls. *See* Doc. 73 at 8. In this light, the Court disagrees with Defendant that Dr. McDonald's lost earning capacity calculation relies on an incorrect assertion that Mr. Herrera is totally disabled and totally unable to work. (Doc. 73 at 4-5). Rather, the Court finds Dr. McDonald offers no opinion in the Report on the extent of Mr. Herrera's disability and ability to work.

The Court is not persuaded by Defendant's reliance on *Rivera v. Volvo Cars of N. Am., LLC*, to support its argument that Dr. McDonald's opinion on lost earning capacity is "based entirely upon statistics and assumptions" and is "too remote and speculative." *See* (Doc. 83 at 3) (citing *Rivera*, 2015 WL 11118067, at *2). First, unlike

here, *Rivera* involved the lost earning capacity for a child who had no employment history. *Rivera*, 2015 WL 11118067, at *2. More to the point, Defendant's argument is not supported by *Rivera*'s analysis. Indeed, as Defendant states in its Reply, the Court in *Rivera* did require as part of the expert's process a consideration of both statistics and facts specific to that child. *Id.* However, the Court further listed the types of facts that would be sufficient: "academic reports, medical records, the family's educational and vocational background, and impressions from interviews with the child and the child's family." *Id.* Here, Dr. McDonald considered facts specific to Mr. Herrera in determining his total lost earning capacity, including Mr. Herrera's age, grade-school education, work experience as a laborer, and family status. (Doc. 73 at 7-8). Therefore, Defendant has failed to show that the Court should preclude Dr. McDonald from testifying at trial on the issue of lost earning capacity.

### III.    Conclusion

For the reasons stated above, the Court finds that Dr. McDonald's testimony is reliable and relevant under Federal Rule of Evidence 702. As a result, Defendant Berkley Regional Insurance Company's *Motion to Exclude Plaintiff's Expert Brian McDonald*, (Doc. 73), is **DENIED**.

**IT IS THEREFORE ORDERED** that Dr. McDonald may testify as an expert witness at trial.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE