IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERARDO HERRERA,

    Plaintiff,

v.                                                          Civ. No. 20-142 CG/GBW

BERKLEY REGIONAL
INSURANCE COMPANY,

    Defendant.

**<u>ORDER PERMITTING DEFENDANT TO TAKE ADDITIONAL DISCOVERY</u>**

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Plaintiff's Claims as a Result of Discovery Violations and Abuses. *Doc. 64*. On January 27, 2021, the Court heard oral arguments on this Motion. *Doc. 95*. At the hearing, Defendant consented to the imposition of lesser sanctions in lieu of the Court issuing a recommendation on the requested sanction of dismissal. *Id.* at 3. Having considered Defendant's Motion, the attendant briefing (*docs. 67, 70*), and the parties' oral arguments, the Court will GRANT Defendant leave to conduct additional discovery as detailed herein.

**I.**     **FACTUAL BACKGROUND**

This case is an insurance dispute arising from a car accident on or about January 10, 2018, in which Plaintiff was a passenger in a vehicle owned by his employer

("D&D") and insured by Defendant. *Doc. 2* at 6; *doc. 64* at 1. Plaintiff brings this suit for damages pursuant to the underinsured motorist provision of the insurance policy and alleges that Defendant's failure to pay amounts due under the policy constitutes bad faith under the New Mexico Unfair Claims Practices Act. *Doc. 2* at 6–7; *doc. 64* at 1–2. Plaintiff filed this suit in state court on January 21, 2020, and Defendant removed it to this Court on February 19, 2020. *Doc. 2*. On April 14, 2020, the Court held a Rule 16 scheduling conference and established a bifurcated track for discovery, with the contractual claim to be addressed in Phase One and bad faith to be addressed in Phase Two. *Doc. 17*. Phase One discovery officially ended on December 20, 2020. *Doc. 44*. Phase Two discovery is set to begin upon the parties' second Rule 16 scheduling conference, set for February 8, 2021. *Doc. 96*.

Defendant brings the instant Motion due to a number of asserted misrepresentations by Plaintiff throughout discovery. Several of these alleged misrepresentations were contained in Plaintiff's response to Defendant's Interrogatory No. 1, which sought general information about Plaintiff's identity. *Doc. 64* at 10. Plaintiff's answers to Defendant's first set of interrogatories were completed on June 9, 2020, although Plaintiff did not swear to the veracity of his answers until June 22, 2020. *Doc. 67* at 2; *doc. 33*; *doc. 64* at 11. Other misrepresentations arose in connection with Plaintiff's deposition, which Defendant took on September 14, 2020. *See doc. 67* at 2.

2

One item of general information sought in Defendant's Interrogatory No. 1 was Plaintiff's social security number. *Doc. 64* at 10. Plaintiff provided a social security number in his sworn response. *Id.* During his deposition, it was revealed that he has no social security number and that the number he had provided was false. *Id.* at 12–13.

Defendant also sought general information concerning Plaintiff's present employment. Plaintiff's sworn response states that he is unemployed. *Id.* at 10. During his deposition, Plaintiff confirmed that he resumed his employment at D&D in January 2020 and continued there until September 11, 2020. *Id.* at 16.

The final inaccuracy in Plaintiff's response to Defendant's Interrogatory No. 1 concerns his driver's license. Plaintiff's response indicates that his "New Mexico driver's license is not current and he does not drive." *Id.* at 10. In fact, it was revealed at Plaintiff's deposition that he possesses a current New Mexico driver's license issued December 11, 2019. *Id.* at 21–22.

The next inaccuracy concerns a discrepancy between Plaintiff's response to Interrogatory No. 1 and his deposition testimony. In response to Defendant's request for all other names he has used, Plaintiff listed an alias of "David Moran." *Id.* at 10. During his deposition, Plaintiff initially denied using any other name than his own. *Id.* at 12. Upon being questioned about his interrogatory response, Plaintiff stated that he forgot that he had used the name "David Moran" in connection with his illegally obtained social security number because he had not used it for many years. *Id.* at 13.

3

The next subject of misrepresentation concerns the events of the collision. During his deposition, Plaintiff stated that he was sitting in his seat and wearing his seatbelt. *Id.* at 27. Plaintiff also stated that there were two impacts, one while he was sitting with his seatbelt on, followed by another after he had taken off his seatbelt due to pain from the first impact.[1] *Id*. Plaintiff's version of events has been contradicted by the driver of D&D's vehicle, Jose Estrada, in a deposition conducted on September 15, 2020. *Doc. 64* at 4, 33–37. According to Mr. Estrada, Plaintiff was laying down in the backseat without his seatbelt upon impact. *Id.* at 33. Mr. Estrada also testified that there was only one impact. *Id.* at 35–36. Mr. Estrada further testified that Plaintiff had asked him to lie and say that Plaintiff was wearing a seatbelt. *Id.* at 37.

The last of the misrepresentations asserted by Defendant relates to Plaintiff's work limitations as a result of the injuries he sustained. Plaintiff has stated that he is restricted to lifting no more than ten pounds. *Id.* at 24–25. Video surveillance conducted on Defendant's behalf shows Plaintiff carrying a twelve-pack of bottled beer from a convenience store to his vehicle. *Doc. 64*, Ex. K. Defendant contends that the twelve-pack of beer weighs more than ten pounds.[2]

---

[1] At the hearing, Plaintiff's counsel informed the Court that Plaintiff had amended portions of his deposition relating to the events of the collision on the transcript errata sheet. *Doc. 95* at 2. This information was not included in either party's briefing, therefore the Court does not include it in its consideration of the instant Motion.

[2] In his response, Plaintiff supplies photographic evidence of a twelve-pack of *canned* beer on a scale weighing exactly ten pounds. *Doc. 67* at 21. In its reply, Defendant states that a twelve-pack of *bottled* beer is "measurably more" than ten pounds. *Doc. 70* at 3.

**II.     LEGAL STANDARDS**

Rule 37 of the Federal Rules of Civil Procedure governs the use of sanctions against parties for discovery abuses.  This rule permits the Court, in certain circumstances, to dismiss a case in whole or in part as a result of a plaintiff's discovery violations.  Fed. R. Civ. P. 37(b)(2)(A)(v).  Additionally, district courts have the inherent power to regulate litigation and impose appropriate sanctions, including dismissal, for conduct which abuses the judicial process.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

"While discovery-related sanctions are generally permissible to protect the integrity of the judicial process, a sanction of dismissal is reserved for violations 'predicated upon willfulness, bad faith, or some fault of [the party] rather than inability to comply.'"  *Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, 291 F.R.D. 638, 643 (D.N.M. 2013) (quoting *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir.1995)).  By contrast, dismissal is not usually an appropriate sanction for "inadvertence or simple neglect" or "isolated instances of noncompliance."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464–65 (10th Cir. 1988).

The Tenth Circuit has identified five factors for district courts to consider in determining whether to issue a dismissal sanction.  *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).  These factors are as follows:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d at 921 (internal quotation marks and citations omitted). These factors "do not constitute a rigid test." *Id*. Rather, they are factors that a district court "may wish to consider" in deciding whether to dismiss an action. *Lee*, 638 F.3d at 1323 (internal quotation marks omitted). *See also Archibeque*, 70 F.3d at 1174–75 (upholding dismissal despite fact that district court did not evaluate all five *Ehrenhaus* factors). District courts enjoy "very broad discretion" in their use of sanctions. *Lee*, 638 F.3d at 1320 (citation omitted).

### III.   ANALYSIS

When considering each of the inaccuracies identified by Defendant in isolation, the Court finds that the prejudice to Defendant fails to rise to the level required to merit the severe sanction of dismissal. Plaintiff's written disclosure of his use of the name David Moran rendered any prejudice from his initial denial at the deposition fairly trivial. Likewise, his failure to explain the nature of the social security number provided in response to Interrogatory No. 1 was rectified by his voluntary admission at the deposition that he does not have a "good Social Security number." *Doc. 64* at 12. Additionally, the Court finds no prejudice to Defendant in Plaintiff's assertion that he was wearing a seatbelt and that there were two impacts. The evidence undermining

Plaintiff's version of events provides a basis for Defendant to attack his credibility. Moreover, whether the surveillance evidence of Plaintiff carrying a twelve-pack of beer defeats his allegation of a lifting restriction is a question for the jury, which is not properly resolved on a motion premised on discovery abuse.

The inaccuracies regarding Plaintiff's driver's license and employment status require more detailed explanations. Regarding the inaccuracy about his driver's license, Plaintiff explains that this was a result of copying and pasting his discovery responses from his suit against the driver who crashed into D&D's vehicle. *Doc. 67* at 4–5. It is true that Plaintiff's response to Defendant's Interrogatory No. 1 is almost identical to the response he completed in May 2019 in the state court matter. *Compare doc. 64* at 10 *with doc. 67* at 18. Most notably, Defendant's Interrogatory No. 1 does not seek any information concerning Plaintiff's driver's license or driving history. *Doc. 64* at 10. Thus, Plaintiff's response on that subject, however inaccurate, was unprompted.

On his employment status, Plaintiff explains that he had received a shutdown notice from D&D effective June 12, 2020 due to the COVID-19 pandemic and the resulting downturn in the oil market. *Doc. 67* at 12. On June 12, 2020, Plaintiff learned that D&D was going to remain open for some time. *Id.* at 13. This information was communicated to Defendant on June 16, 2020. *Id*. Then, on June 19, 2020, Plaintiff informed Defendant that, while D&D would remain open, Plaintiff was no longer employed by them. *Id.* at 14. Through July 3, 2020, Plaintiff continued to represent

7

himself as unemployed to Defendant.  *Doc. 94* at 4–5.  Plaintiff's next communication on the subject was in his demand letter sent to Defendant pursuant to the Court's Order Setting Settlement Conference (*doc. 18*) on August 14, 2020.  *Doc. 67* at 15–16.  For the first time since June 16, 2020, Plaintiff indicated that his employment had been reinstated.  *Id*.  Finally, at his deposition, Plaintiff stated that he had been consistently employed by D&D from January 2020 until September 11, 2020.  *Doc. 64* at 16.  Plaintiff contends that "[f]rom June through September 2020 Plaintiff's employment situation can best be described as being in an unpredictable state of flux" and that "Plaintiff did his best to keep Defendant updated on the changing situation."  *Doc. 67* at 4.  Although the Court is concerned by Plaintiff's silence on the subject between July 3 and August 14, it does not appear, as Defendant suggests, *see doc. 70* at 3, that Plaintiff attempted to mislead Defendant into believing that his unemployment was due to his injuries.  The email communication of June 16 makes no attempt to hide that the reason for his potential unemployment was a shutdown.

     For the reasons indicated, each alleged misrepresentation is not sufficiently egregious, standing alone, to merit the sanction of dismissal.  Defendant argues that the aggregate impact weighs in favor of dismissal.  Tenth Circuit precedent appears to support this argument.  *See Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1080–81 (10th Cir. 2009).  In *Garcia*, the Tenth Circuit held that the "submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of

8

all of the culpable party's submissions throughout litigation." *Id.* at 1180. Although this broad language appears to support the sanction of dismissal for any number of falsehoods, the precise factual circumstances at issue were found to be "especially egregious." *Id.* at 1178. The plaintiff had fabricated four documents produced in discovery, at least two of which were directly related to the plaintiff's claims. *Id.* at 1177. The Court emphasized that the fabrications "were submitted over a several year period" and "were carefully constructed to look like authentic documents." *Id.* at 1181. In summary, the falsehoods at issue in *Garcia* were persistent, unambiguous, and directly relevant to the plaintiff's claims. The inaccuracies identified by Defendant do not meet this standard.

The Court is further convinced that dismissal is not merited due to the availability of effective lesser sanctions. At the hearing, when asked to articulate the concrete prejudice to Defendant, Defendant's counsel focused primarily on the inability to adequately prepare for Plaintiff's deposition. *Doc. 95* at 2. The Court acknowledges the inconvenience to Defendant in having to spend a significant portion of Plaintiff's deposition untangling various inconsistencies, most of which concerned basic background information. However, the prejudice suffered by Defendant in this regard can be remedied by a lesser sanction than dismissal: permitting Defendant to take a second deposition of Plaintiff and charging the costs of the second deposition to Plaintiff. *See* Fed. R. Civ. P. 30(d)(2) (permitting the Court to impose "an appropriate

9

sanction" against a party "who impedes, delays, or frustrates the fair examination of the deponent"); *Holland v. Williams*, 2018 WL 942228, at *2 (D. Colo. Feb. 12, 2018) (unpublished) (noting that Rule 30(d)(2) sanctions may be imposed on the deponent). The Court further finds good cause to permit Defendant to issue additional interrogatories and requests for production to obtain accurate information on any matter left unsettled by Plaintiff's discovery responses.

At the hearing, the Court proposed ordering these lesser sanctions in lieu of issuing a recommendation on Defendant's requested sanction of dismissal. *Doc. 95* at 3. The Court noted that addressing the request for dismissal would entitle the parties to file objections pursuant to 28 U.S.C. § 636(b)(1)(C). *Id*. Both parties agreed to forfeit the objection period and proceed with additional discovery. *Id*. Accordingly, the Court will not make any recommendation as to the dismissal of this case and will instead order additional discovery as described.

## IV. ATTORNEY'S FEES

Defendant has requested, in addition to further discovery, reimbursement of its reasonable expenses incurred in bringing this Motion. *Doc. 95* at 3. Plaintiff has objected to this request. *Id*. Defendant has not identified the source of authority on which it premises its request. Therefore, the Court must first identify a source of authority for the imposition of sanctions. The Court must then determine whether the conduct at issue merits an award of expenses under the applicable source of authority.

Sanctions are authorized by the Federal Rules of Civil Procedure for various forms of misconduct.  Rule 37 provides for the payment of an opposing party's reasonable expenses, including attorney's fees, for a variety of discovery violations.  Sanctions are available pursuant to Rule 37(a) or (d) if the moving party attempted in good faith to confer with the opposing party before filing the motion.  *See* Fed. R. Civ. P. 37(a)(1), (d)(1)(B).  Sanctions pursuant to Rule 37(b) require a prior court order that the opposing party has violated.  *See generally* Fed. R. Civ. P. 37(b).  Sanctions pursuant to Rule 37(c) relate to a party's failure to make an initial disclosure, supplement an earlier discovery response, or make a requested admission.  *See generally* Fed. R. Civ. P. 37(c).

The Court may also authorize payment of the opposing party's attorney's fees pursuant to its inherent authority "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46 (internal quotation marks and citation omitted).  Where an existing Rule authorizes a sanction, the Court should ordinarily impose the sanction pursuant to the Rule, in accordance with the procedures prescribed thereby.  *Id.* at 50.  Where the Rules do not provide a sanction in the precise circumstances before the Court, it may proceed under its inherent authority, albeit with caution and in accordance with the dictates of due process.  *See id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).  Fees awarded pursuant to the Court's inherent authority "may go no further than to redress the wronged party for

11

losses sustained" as a result of misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks and citation omitted).

The Court will not award attorney's fees under either Rule 37 or its inherent authority.[3] The conduct of which Defendant complains is not sanctionable under Rule 37, either because Defendant has not satisfied the applicable procedural prerequisites[4] or because the inaccuracy at issue was corrected during discovery, *see* Fed. R. Civ. P. 26(e)(1)(A). The Court declines to impose sanctions pursuant to its inherent authority because the relief Defendant sought by filing this Motion was disproportionate to the misconduct that Defendant sought to redress.

## V.  CONCLUSION

For the foregoing reasons, the Court will not issue any recommendation on Defendant's requested sanction of dismissal but will instead permit Defendant to take additional Phase One discovery.

IT IS HEREBY ORDERED that Defendant is PERMITTED to take a second deposition of Plaintiff, limited to three hours, with the costs to be borne by Plaintiff. This deposition must be completed by April 30, 2021.

---

[3] A third potential source for sanctions is Rule 26(g), which authorizes sanctions against opposing counsel for discovery violations. Defendant, however, does not cite Rule 26(g) nor was its request for costs explicitly directed at counsel (as opposed to Plaintiff). *See doc. 64* at 9. As such, the Court will not consider Rule 26(g) as justification for Defendant's request.

[4] Relevant to subsections (a) and (d) of Rule 37, Defendant does not indicate whether it attempted in good faith to confer with Plaintiff to resolve any of the concerns it has raised to this Court. Relevant to subsections (a) and (b), Defendant did not seek an order from this Court either compelling or permitting discovery.

12

IT IS FURTHER ORDERED that, within **fourteen (14) days** of Plaintiff's second deposition, Defendant shall submit an affidavit detailing its reasonable expenses including attorney's fees incurred in the second deposition.  Plaintiff's objections to the amounts claimed, if any, shall be filed within **five (5) days** of the filing of the affidavit.

IT IS FURTHER ORDERED that Defendant is PERMITTED to issue five (5) new interrogatories and five (5) new requests for production notwithstanding the limits set in the Court's Order Setting Pretrial Deadlines and Briefing Schedule for Phase One of Discovery (*doc. 17*).  These discovery requests must be propounded no later than February 28, 2021.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE