IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERARDO HERRERA,

    Plaintiff,

v.                                                                  Civ. No. 20-142 CG/GBW

BERKLEY REGIONAL
INSURANCE COMPANY,

    Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before me pursuant to the Court's Order of Reference (*doc. 144*), referring Plaintiff's Motion to Amend Complaint (*doc. 122*) to me for findings of fact and a recommended disposition. Having reviewed Plaintiff's Motion and all attendant briefing (*docs. 131, 136*), I recommend that the Court DENY the Motion for failure to satisfy good cause under Rule 16.

**I.**     **BACKGROUND**

Plaintiff's Original Complaint to Recover Insurance Proceeds and Damages for Unfair Claims Practices was filed in state court on January 21, 2020. *Doc. 2* at 6–8. Plaintiff alleges that, while he was a passenger in a vehicle owned by his employer and insured by Defendant, he sustained injuries as a result of a car accident with an underinsured driver. *Id.* at 6. Plaintiff alleges that Defendant failed to pay amounts due under the insurance policy. *Id.* at 7. Plaintiff also alleges that Defendant engaged

in unfair claims practices under New Mexico's Unfair Claims Practices Act ("UCPA"), N.M. Stat. Ann. § 59A-16-20, including failure to settle an insured's claims promptly after liability is apparent; failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement; compelling an insured to institute litigation to recover amounts due under the policy; and failing to promptly provide a reasonable explanation for the denial of a claim or for the offer of settlement. *Id.*

Defendant removed this case to federal court on February 19, 2020. *Id.* at 1–5. On February 25, 2020, I issued an Initial Scheduling Order requiring the parties to meet and confer by March 24, 2020 and file a Joint Status Report and Provisional Discovery Plan ("JSR") by March 31, 2020. *Doc. 8*. In the parties' JSR, under the heading "Nature of the Case," the parties report that "Plaintiff has also alleged bad faith in the adjustment of [his] claim." *Doc. 13* at 1. Under the heading "Plaintiff's Contentions," the JSR includes an allegation that "Defendant has acted in bad faith by failing to tender the [policy] limits months ago once [damages] became reasonably clear." *Id.* at 3. Under the heading "Defendant's Contentions," the JSR states that "Defendant denies any claims for bad faith." *Id.*

At the parties' Rule 16 Scheduling Conference, held April 14, 2020, I adopted a bifurcated discovery plan, with extracontractual/bad-faith claims to be addressed in the second phase. *Docs. 16, 17*. A pleading amendment deadline was set for April 15, 2020 for Plaintiff. *Doc. 17* at 1. On April 20, 2020, Defendant filed an Unopposed Motion to

Bifurcate and Stay Discovery and Proceedings as to Plaintiff's Extra-Contractual Claims. *Doc. 19*. Throughout this motion, Defendant presented arguments and authority specific to bad faith. *See id.* at 4 (citing cases in which contractual claims were bifurcated from bad-faith claims); *id.* at 8 (arguing that "documents may be discoverable in the bad faith claim that would be privileged in the personal injury case"); *id.* at 9 (noting that bifurcation would be appropriate to prevent Plaintiff from seeking "protected claim file information and other discovery which only relates to the bad faith claims" before such claims ripen).

On November 12, 2020, Plaintiff filed a Motion to Compel Production of Surveillance Videos. *Doc. 69*. Plaintiff argued that the requested surveillance videos were relevant to prove both damages and bad faith. *Id.* at ¶¶ 7, 28–30. In response to Plaintiff's argument that the surveillance video was relevant to bad faith, Defendant raised two arguments. *See doc. 78*. First, Defendant stated that the request was "premature as discovery regarding bad faith has yet to commence." *Id.* at 7. Second, Defendant contended that the mere fact of surveillance cannot be used as evidence of bad faith. *Id*. Defendant did *not* contend that evidence of bad faith was irrelevant because no bad-faith claim was raised. On January 27, 2021, I held a hearing on Plaintiff's motion, at which Plaintiff's counsel pressed his position that surveillance was relevant to bad faith. *Doc. 95* at 4. Defendant's counsel did not object to the allusion to a bad-faith claim.

3

On February 1, 2021, I issued a Phase Two Scheduling Order requiring the parties to meet and confer and file a new JSR by February 4, 2021. *Doc. 96*. In the parties' second JSR, under the heading "Plaintiff's Contentions," Plaintiff asserts that "Defendant committed bad faith claims practices by engaging in unreasonable delay in investigating and paying amounts due under the subject policy." *Doc. 98* at 2. Under the heading "Provisional Discovery Plan," the parties report that discovery will be needed on "[b]ad faith related allegations and applicable defenses." *Id.* at 3.

At the parties' Phase Two Rule 16 Scheduling Conference, held February 8, 2021, I set deadlines for Phase Two discovery, but no new pleading amendment deadlines were discussed or established. *Docs. 99, 100*. During the conference, Plaintiff's counsel revisited the topic of the surveillance evidence and reasserted that both the surveillance videos and depositions of the surveillance officers were relevant to bad faith. *Doc. 99* at 3. The Court responded that the content of the surveillance videos was not necessary to establish bad faith and the question of deposing the surveillance officers was not properly before it. *Id*. The Court opined that depositions of the surveillance officers may be relevant and noted that, if Defendant disagreed, it should move for a protective order. *Id*. Defendant has not moved for such a protective order to date.

On April 1, 2021, Plaintiff filed a Motion to Compel Production. *Doc. 117*. Among other things, Plaintiff sought to compel production/disclosure of loss reserves information as relevant to a claim of bad faith. *Id.* at 2–3. On April 9, 2021, Defendant

4

filed a response, asserting for the very first time that information pertaining to bad faith is irrelevant because Plaintiff did not include a claim of bad faith in his complaint. *Doc. 124* at 4. On the same day, Plaintiff filed the instant Motion to Amend Complaint, nearly a year after the expiration of his pleading amendment deadline. *Doc. 122*.

## II.   LEGAL STANDARD

Leave to amend a complaint at this stage requires either Defendant's consent or the Court's leave. *See* Fed. R. Civ. P. 15. The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant leave to amend a complaint is within the Court's discretion. *Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962)).

When a party moves to amend a pleading after the deadline set in the scheduling order, it must satisfy Rule 16's good-cause standard in addition to the requirements of Rule 15. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) ("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed R. Civ. P. 16(b)(4) *and* (2) satisfaction of the Rule 15(a) standard.") (emphasis added). The purpose of setting

5

an amendment deadline in the scheduling order is to "assure[] that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. Nonetheless, "total inflexibility is undesirable." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (quoting *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir. 1987)).

### III. ANALYSIS

Plaintiff seeks to amend his complaint to add allegations of bad-faith conduct and a continuing course of such conduct by Defendant. *See doc. 122* at 19–22. Plaintiff also seeks to add a request for punitive damages. *Id.* at 22. Defendant responds that Plaintiff's motion should be denied for untimeliness, unfair prejudice, and futility. *See generally doc. 131*.

As a preliminary matter, I must address Defendant's contention that violations of the UCPA are distinct causes of action from bad faith. *See doc. 131* at 5. This is an inaccurate statement of the law. "An insurer is subject to a common law and statutory duty of good faith." *Dydek v. Dydek*, 288 P.3d 872, 878 (N.M. Ct. App. 2012) (citing N.M. Stat. Ann. § 59A-16-20(E) and *Dairyland Ins. Co. v. Herman*, 954 P.2d 56, 60–61 (N.M. 1997)). Under the UCPA, a statutory duty of good faith arises from the provision that prohibits "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." N.M. Stat. Ann. § 59A-16-20(E); *see also Nilson v. Peerless Indem. Ins. Co.*, 484 F. Supp. 3d 1050,

1086 (D.N.M. 2020). Plaintiff's Original Complaint mirrors this provision, alleging that Defendant "[f]ail[ed] to attempt to in good faith to [*sic*] effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear." *Doc. 2* at 7. Thus, a bad-faith claim *has* been included in this case from its inception. What Plaintiff seeks to add is common-law bad faith, which may be premised on other violations of an insurer's duty of good faith as well as a failure to settle. *See, e.g., Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 232 (N.M. 2004).

### A. Rule 15

#### 1. *Undue Delay*

The Tenth Circuit has held that objections of "undue delay" pursuant to Rule 15 require something more than mere untimeliness. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (noting that the "[e]mphasis is on the adjective"). To determine whether a delay is undue, the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. Under Rule 15, an amendment may be denied if it appears the plaintiff is attempting to make the complaint a moving target, to salvage a lost case by new theories of recovery, to raise "theories seriatim," or to knowingly delay raising an issue until the eve of trial. *Id.* (citations omitted).

Plaintiff's principal reason for his delay is that evidence recently adduced in discovery shows that Defendant's bad faith is a continuing course of conduct. *See doc. 122* at 1–4. Most notably, Plaintiff alleges that Defendant's ongoing failure to settle was

established from the deposition of Defendant's adjuster, Brittany Cusack, on April 5, 2021. *Id.* at 2. Plaintiff explains that Ms. Cusack admitted in her deposition that she did not raise the settlement offer even after receiving evidence supporting higher damages. *Id.* at 2–4; *doc. 136* at 6–7. Plaintiff's explanation is adequate for purposes of Rule 15. Furthermore, the procedural history of this case, as recounted above, plainly establishes that the parties have treated this case as including bad faith from its inception. Accordingly, there is no reason to suspect Plaintiff of the sort of gamesmanship contemplated in *Minter*. Plaintiff's motion is not unduly delayed under Rule 15.

    2. *Undue Prejudice*

Prejudice has been treated by the Tenth Circuit as the "most important" factor in deciding a motion to amend under Rule 15. *Minter*, 451 F.3d at 1207. "Typically, courts will find prejudice only when an amendment unfairly affects non-movants in terms of preparing their response to the amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation, brackets, and internal quotation marks omitted). Courts most often make such a finding "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter*, 451 F.3d at 1208. An amendment may be found to be prejudicial "if its timing prevents the defendant from pursuing a potentially promising line of defense[.]" *Id.* at 1209.

Plaintiff's principal argument against finding prejudice is that Defendant has been on notice regarding Plaintiff's intention to include bad faith and punitive damages in this case since before it was filed. *See generally doc. 122*. The procedural history of this case, as detailed above, shows that Plaintiff has treated this case as including a bad-faith claim as early as March 2020, without objection from Defendant. Defendant makes a single reference to prejudice in its response, stating that "Defendant would be unfairly prejudiced by any potential amendment at this time." *Doc. 131 at 3*. Defendant does not explain *why* it would be prejudiced. Defendant notes that this motion was filed past the half-way mark for Phase Two discovery but does not assert that the burdens of discovery will increase due to the "addition" of a bad-faith claim. Given that Plaintiff's case already includes bad faith, which Defendant has tacitly accepted for more than a year, there is no reason to believe that Plaintiff's proposed amendments will prejudice Defendant in terms of its ability to prepare a defense.

3. *Futility*

Defendant argues that the proposed addition of punitive damages to Plaintiff's request for relief is futile because punitive damages are not available pursuant to the UCPA. *Doc. 131 at 6*. The Supreme Court of New Mexico has not yet answered the question of whether punitive damages are available for violations of the UCPA. *See Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 77 (N.M. 2004). But dicta in *Hovet* provides persuasive reasoning to conclude that the UCPA limits recovery to actual damages, as

9

this district's Honorable Judge Vázquez has found. *See Charters v. Geico Indem. Co.*, 2018 WL 4222388, at *2–4 (D.N.M. Sept. 5, 2018) (unpublished). Unless Plaintiff is permitted to add common-law bad faith to his complaint, punitive damages are not available to him.

Defendant's futility argument thus turns on whether or not Plaintiff will be permitted to amend his complaint and does not provide a self-sufficient basis to deny Plaintiff's motion. Based on the lack of undue delay and undue prejudice, Rule 15 poses no barrier to Plaintiff's proposed amendments. The only remaining question is whether Plaintiff has satisfied the good-cause standard of Rule 16.

### B. Rule 16

Good cause under Rule 16(b)(4) "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (unpublished) (quoting *Minter*, 451 F.3d at 1205 n.4). Unlike Rule 15, Rule 16 "does not focus on the bad faith of the movant, or the prejudice to the opposing party." *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citation omitted). "In practice, this standard requires the movant to show 'the scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco*, 204 F.R.D. at 668). "Rule 16(b)(4) is arguably more stringent than Rule 15," calling for a closer examination of the movant's reasons for the delay. *Husky*

10

*Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018) (quoting *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1195 (10th Cir. 2015)). Rule 16 may prevent amendments where, for example, the movant "knew of the underlying conduct but simply failed to raise its claims." *Id.* at 1020 (internal brackets omitted) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015)).

Plaintiff's primary explanation for the delay is that the deposition of Ms. Cusack on April 5, 2021 provided a basis to allege ongoing bad-faith conduct because Ms. Cusack admitted that she did not increase the settlement offer even after receiving evidence that Plaintiff's damages were higher than their original offer. *Doc. 122* at 2–4; *doc. 136* at 6–7. Plaintiff asserts that the "evidence obtained from the claims file and the testimony [of] Ms. Cusack is that Defendant has not made any offer since the offer of settlement of $70,000 made on January 21, 2020." *Doc. 122* at 2. But neither the claims file nor Ms. Cusack's testimony were necessary for Plaintiff to know whether or not Defendant has made him an offer of settlement since this lawsuit was filed. Indeed, Plaintiff (or his counsel) would necessarily be the first to know of any and all settlement offers by Defendant. To resolve the question of Plaintiff's diligence, one must look instead to when Defendant received the evidence that purportedly triggered its duty to increase its settlement offer.

Upon closer inspection of this evidence, Plaintiff has failed to establish that he could not, with diligence, bring the proposed amendments any earlier than he did.

11

First, Plaintiff relies on a note from his treating surgeon, Dr. Wilson, opining that Plaintiff's injuries were all caused by the subject car accident. *See id.* at 2–3, 5. This note is dated February 21, 2020, well before any pleading amendment deadline was set. *See id.* at 16. Plaintiff also relies on the deposition of Defendant's medical expert, Dr. Mack, who did not disagree with Dr. Wilson's opinion as to causation. *Id.* at 3–4. Dr. Mack's deposition was taken on November 13, 2020, nearly five months before Plaintiff filed this motion. *Id*. at 3. If this deposition triggered a duty on Defendant's part to make a new settlement offer to Plaintiff, Plaintiff surely knew of Defendant's failure to fulfill its duty well before April 9, 2021. Good cause requires an adequate explanation for delays of even three to four months. *Birch*, 812 F.3d at 1248; *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990).

Similarly, Plaintiff relies on the deposition of his economic expert, Dr. McDonald, taken on March 23, 2021, even though Defendant received Dr. McDonald's report on June 4, 2020. *Doc. 122* at 3. Again, if Defendant had a duty to offer an increased settlement based on Dr. McDonald's opinions, then Plaintiff knew of its failure long before he filed this motion. Finally, Plaintiff relies on the deposition of Defendant's economic expert, Mr. Sims, but he does not indicate when that deposition was taken. *Id*. Even if Mr. Sims' opinions were only recently produced, the other evidence relied on by Plaintiff establishes that he knew of the conduct supporting his continuing-conduct claim several months before he filed this motion.

12

Plaintiff asserts that the above described evidence "prov[es] up" his bad-faith case. *See, e.g., doc. 122* at 5. But "proving up" one's case happens only after the pleadings are set. One pleads one's case, and then one proves it. A reverse standard would permit a party to amend his pleadings virtually any time before the close of discovery and effectively nullify pleading amendment deadlines under Rule 16. Such a standard is clearly not endorsed by the drafters of the Federal Rules and should not be adopted here.

In seeking leave to amend his complaint, Plaintiff has exceeded his pleading amendment deadline by nearly a year. The only argument Plaintiff advances regarding his diligence is that the recent deposition of Ms. Cusack supports adding a claim of ongoing bad faith. However, based on the evidence he has cited, Plaintiff knew of the conduct supporting a claim of ongoing bad faith several months before he moved to amend. Therefore, I recommend that the Court deny the motion for failure to demonstrate the diligence required to show good cause under Rule 16.

### IV. CONCLUSION

For the foregoing reasons, I RECOMMEND that Plaintiff's Motion to Amend Complaint (*doc. 122*) be denied for failure to satisfy the good-cause standard of Rule 16.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**