IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERARDO HERRERA,

    Plaintiff,

v.    Civ. No. 20-142 CG/GBW

BERKLEY REGIONAL
INSURANCE COMPANY,

    Defendant.

## ORDER GRANTING MOTION TO COMPEL

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Production. *Doc. 157*. Having considered the Motion, the attendant briefing (*docs. 158, 162*), and all relevant law, the Court GRANTS the Motion.

**I.**     **BACKGROUND**

Plaintiff filed this suit on January 21, 2020, pursuant to the underinsured motorist provision of his former employer's insurance policy and the New Mexico Unfair Claims Practices Act. *Doc. 2*. On April 14, 2020, the Court held a Rule 16 scheduling conference and established a bifurcated track for discovery, with the contractual claim to be addressed in Phase One and the extracontractual claims to be addressed in Phase Two. *Doc. 17*. On February 8, 2021, the Court held a second Rule 16 scheduling conference to initiate Phase Two of discovery. *Doc. 99*. The Court set a discovery deadline of July 1, 2021, for Phase Two. *Doc. 100* at 1.

On April 1, 2021, Plaintiff filed a motion to compel production, which this Court denied due to Plaintiff's failure to comply with Local Rule 37.1. *Docs. 117, 129*. Despite this failure, the Court reviewed the substance of Plaintiff's motion and concluded that Plaintiff's request for loss reserve information merited further inquiry, as courts routinely permit disclosure of loss reserves as relevant to bad faith. *Doc. 129* at 5–6. One of Defendant's objections to disclosure was that Plaintiff had not asserted a bad-faith claim. *Doc. 124* at 4. Accordingly, the Court could not determine the relevance of loss reserves until the question of whether this case includes a bad-faith claim was resolved. *Doc. 129* at 6. On June 9, 2021, the Court found that a bad-faith claim has been included in this case since its inception and therefore set a deadline for a renewed motion to compel. *Docs. 155, 156*. On June 16, 2021, Plaintiff timely filed a renewed motion to compel.[1] *Doc. 157*. Defendant filed a response in opposition on June 18, 2021. *Doc. 158*. Plaintiff filed a reply on June 22, 2021. *Doc. 162*.

II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide the following general standard of discoverability:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of

---

[1] The Court must note that Plaintiff *still* failed to comply with Local Rule 37.1 by not attaching the subject discovery request and response to this motion. Prompted by Defendant, Plaintiff has attached them to his reply. *See doc. 158* at 1; *doc. 162* at 4–15. Unlike the first iteration of this motion, the present motion can be resolved without analyzing the specific content of the request and response. Thus, the Court declines to deny Plaintiff relief on this basis.

> the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if it has any tendency to make a material fact more or less probable.  Fed. R. Evid. 401.  Information "need not be admissible in evidence to be discoverable," Fed R. Civ. P. 26(b)(1), and discovery rules "are to be accorded a broad and liberal treatment," *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  However, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly."  *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

Under Rule 26, parties may invoke work-product protection to prevent discovery into "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).

### III.    ANALYSIS

As the Court noted in its prior order, loss reserves settings are discoverable as relevant to a claim of bad faith.  *Doc. 129* at 5–6; *see Barela v. Safeco Ins. Co. of Am.*, 2014 WL 11497826, at *7 (D.N.M. Aug. 22, 2014) (unpublished); *North River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 645 (D. Kan. 2007); *Morrison v. Chartis Prop. Cas. Co.*, 2014 WL

3

840597, at *3 (N.D. Okla. Mar. 4, 2014) (unpublished); *Porter v. Farmers Ins. Co.*, 2011 WL 1566018, at *2 (N.D. Okla. Apr. 25, 2011) (unpublished). Defendant contends that loss reserves are not relevant under the specific facts of this case but cites no case law disfavoring production of loss reserves. *See doc. 158*.

First, Defendant contends that, prior to September 11, 2019, Defendant did not receive sufficient documentation to properly assess Plaintiff's claim. *Id.* at 4. The gist of this argument appears to be that any loss reserves set while Defendant was awaiting documentation are unreliable as an indicator of Defendant's assessment of its own liability. This argument attacks the reliability and admissibility of loss reserves evidence—not its discoverability. As such, it is not dispositive of the current question. *See Bunge*, 244 F.R.D at 644–45; *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Defendant also cursorily suggests that loss reserves are relevant only to common-law bad faith (which is not presently a part of Plaintiff's case) and not to statutory bad faith (which has been a part of Plaintiff's case since its inception, *see doc. 155* at 6–7). *Doc. 158* at 4. Defendant provides neither reasoning nor authority for drawing a distinction between common-law and statutory bad faith in this context. Its citation to *North River*, 872 F. Supp. at 1411, is inapposite.

Defendant next contends that, from September 11, 2019 onward, Defendant's conduct (including any adjustment to its loss reserves settings) was in anticipation of

4

litigation and thus protected by work-product protection.[2]  *Doc. 158* at 4–5.  As

Defendant notes, this Court previously found that notes by the claims adjuster from

September 11, 2019 onward labeled "Communication with/from Defense Counsel" were

made in anticipation of litigation.  *See doc. 129* at 4–5.  But work-product protection

cannot rest on a blanket claim.  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th

Cir. 2010).  The party asserting the privilege has the burden of establishing that it

applies to specific documents.  *Id*.  Defendant's bare assertion that it "had entered into a

posture of anticipation of litigation," *doc. 158* at 5, does not suffice to show that the

particular information sought by Plaintiff was made in anticipation of litigation.

Courts across the Tenth Circuit have opined that applying work-product

protection to loss reserves settings requires the insurer to "provide sufficient detail

about the setting of the reserves to justify invocation of the doctrine."  *Linville v. Nat'l*

*Indem. Co.*, 2014 WL 12593993, at *4 (D.N.M. Sept. 30, 2014) (unpublished); *see also*

*Bunge*, 244 F.R.D. at 645.  Specifically, the insurer must make some showing that the

reserves were made "in anticipation of litigation" and not "in the ordinary course of

business."  *Melton Truck Lines, Inc. v. Indem. Ins. Co. of N. Am.*, 2005 WL 8175525, at *4

(N.D. Okla. July 14, 2005) (unpublished).  Here, Defendant states that it reassessed its

---

[2] Defendant also invokes attorney-client privilege but does not contend that the setting of loss reserves is a communication between Defendant and its counsel.  *See doc. 158* at 5.  Attorney-client privilege protects only communications between attorneys and their clients and not any underlying facts contained in a communication.  *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).

5

loss reserves in November 2019, "months after [Defendant] had retained legal counsel and after Plaintiff had *recently* provided different sets of medical and employment records." *Doc. 158* at 3 (emphasis added). This statement permits an inference that the updated medical and employment records are what prompted Defendant to adjust its loss reserve settings, rather than the anticipated litigation. Defendant has not carried its burden of establishing that its loss reserve settings are protected by work-product protection.

Finally, Defendant argues that reserves set during litigation are irrelevant because conduct during litigation cannot be used as evidence of bad faith, citing to *Montoya v. Loya Ins. Co.*, 2019 WL 430881 (D.N.M. Feb. 4, 2019) (unpublished). *Doc. 158* at 5. It is unclear if Defendant has in fact adjusted its loss reserve settings since this lawsuit was initiated on January 21, 2020. *See id.* at 3 (indicating that Defendant reassessed its loss reserves in November 2019 and, "[u]pon information and belief," has readjusted them since litigation began). In any event, the information that Plaintiff seeks is not "litigation conduct." In this context, "litigation conduct" refers to "litigation tactics and strategy in defending a claim." *Montoya*, 2019 WL 430881, at *2 (quoting *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 340 (10th Cir. 1995)). It does not refer to conduct that routinely occurs outside of litigation as well as during it. *Cf. Timberlake*, 71 F.3d at 339–40 (addressing the admissibility of the insurer's communications with counsel, counterclaim against the insured, and motion for joinder

6

as evidence of bad faith); *Sinclair v. Zurich Am. Ins. Co.*, 129 F. Supp. 3d 1252, 1256–58 (D.N.M. 2015) (addressing the admissibility of the insurer's failure to disclose controlling precedent in its motion for summary judgment). The conduct at issue here is a matter of routine practice outside of litigation, as insurers are generally required by statute to set loss reserves. *See N. River*, 872 F. Supp. at 1412. While the fact of litigation may have caused Defendant to reevaluate its loss reserve settings, it does not follow that any resulting adjustments constitute a defense strategy.

IV.     ATTORNEY'S FEES

Pursuant to Federal Rule of Civil Procedure 37, if a motion to compel is granted, the Court must grant the movant an award of his reasonable expenses, including attorney's fees, incurred in filing the motion. Fed. R. Civ. P. 37(a)(5)(A). However, the Court must *not* award expenses if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

*Id*.

Plaintiff properly sought Defendant's concurrence before resorting to this Court. Defendant's refusal to produce loss reserve settings was not substantially justified. Once the Court clearly rejected Defendant's original argument that Plaintiff failed to plead bad faith, its arguments against Plaintiff's renewed motion are lacking in both

7

persuasive reasoning or legal authority. Furthermore, its arguments premised on work-product protection and litigation conduct, had the Court accepted them, would not have justified Defendant's refusal to provide *all* loss reserve settings. Finally, the Court is not aware of any circumstances that would make an award of expenses unjust.

V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Production (*doc. 157*) is GRANTED.

**IT IS ORDERED** that Defendant shall provide Plaintiff with all loss reserves information previously withheld from the claims file **no later than July 1, 2021**.

**IT IS FURTHER ORDERED** that, within **seven (7) days** of this Order, Plaintiff shall submit an affidavit detailing the reasonable attorney's fees and costs expended in briefing this Motion. Defendant's objections to the amount claimed, if any, shall be filed within **five (5) days** of the filing of the affidavit.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE