IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERARDO HERRERA,

    Plaintiff,

v.                                                          Civ. No. 20-142 CG/GBW

BERKLEY REGIONAL
INSURANCE COMPANY,

    Defendant.

## ORDER DENYING MOTION TO RECONSIDER AND
## DIRECTING DEFENDANT TO PAY PLAINTIFF'S ATTORNEY'S FEES

THIS MATTER comes before the Court on Defendant's Motion to Reconsider Court's June 24, 2021, Order to Compel. *Doc. 170*. Having considered the Motion, the attendant briefing (*docs. 175, 179*), and all relevant law, the Court DENIES the Motion. Additionally, having reviewed Plaintiff's affidavit of expenses (*doc. 169*), the Court ORDERS Defendant to pay Plaintiff an expense award of $1,213.12.

**I.**     **BACKGROUND**

On April 14, 2020, the Court held a Rule 16 scheduling conference and established a bifurcated track for discovery. *Doc. 17*. On February 8, 2021, the Court held a second Rule 16 scheduling conference to initiate Phase Two of discovery. *Doc. 99*. The Court adopted the deadlines for production of expert reports proposed by the parties, with Plaintiff's expert reports due forty-five days after the deposition of

Defendant's adjuster and Defendant's expert reports due thirty days thereafter. *Id.* at 1. The Court adopted these deadlines with the proviso that the deposition of Defendant's adjuster must take place no later than April 10, 2021. *Id.* The Court also adopted a deadline of July 1, 2021, for the completion of Phase Two discovery. *Id.*

On March 9, 2021, the Court held a status conference with the parties. *Doc. 109*. Upon learning of a potential dispute regarding discovery requests that might delay the adjuster's deposition, the Court emphasized the need for diligence from the parties in attempting to meet their scheduling deadlines. *Id.* at 2–3. The Court stated that it would set an expedited briefing schedule as to any motion to compel that might affect the timing of the adjuster's deposition. *Id.* at 3. On April 1, 2021, Plaintiff filed a motion to compel production of various documents including loss reserves information. *Doc. 117*. As promised, the Court set an expedited briefing schedule, requiring Defendant to respond to Plaintiff's motion eight days after its filing and Plaintiff to file any reply within four days thereafter. *Doc. 119*. Defendant timely responded on April 9, 2021, and Plaintiff timely replied on April 13, 2021. *Docs. 124, 125*.

On April 20, 2021, the Court filed an order denying the motion to compel due to a procedural defect in Plaintiff's motion. *Doc. 129*. Notwithstanding this defect, the Court reviewed the substance of Plaintiff's motion and concluded that Plaintiff's request for loss reserves merited further inquiry. *Id.* at 5–6. In reaching this conclusion, the Court noted the cases cited by Plaintiff in which loss reserves were held to be

2

discoverable as relevant to bad faith. *Id*. For reasons not relevant here, the Court determined that it could not then rule on the request for loss reserves, and so it denied Plaintiff's motion without prejudice to its being refiled on the subject of loss reserves by a deadline to be set by the Court at a later time. *Id.* at 6–7.

On June 9, 2021, the Court set a deadline for the filing of a renewed motion to compel production of loss reserves. *Doc. 156*. The Court reiterated that case law supports discovery into loss reserves as relevant to bad faith. *Id.* at 1. In order to resolve this matter prior to the discovery deadline of July 1, 2021,[1] the Court again set an expedited briefing schedule, requiring Plaintiff to file his motion within seven days of the Court's order, Defendant to respond within four days of Plaintiff's motion, and Plaintiff to file any reply within two days of Defendant's response. *Id.* at 2. Plaintiff timely filed his motion on June 16, 2021. *Doc. 157*. Defendant responded two days later, on June 18, 2021. *Doc. 158*. Plaintiff filed a reply on June 22, 2021. *Doc. 162*.

On June 24, 2021, the Court filed an order granting the motion to compel production of loss reserves information. *Doc. 167*. Finding that Defendant's opposition to production of this information was not substantially justified, the Court granted Plaintiff his reasonable expenses pursuant to Rule 37. *Id.* at 7–8. On July 1, 2021, Defendant filed the instant Motion, asking this Court to reconsider its order. *Doc. 170*.

---

[1] Although the Court was not express on this point, it also considered the expedited briefing schedule proper in light of the fact that the parties had already briefed the issue once before.

Plaintiff filed a response on July 15, 2021, to which Defendant filed a reply on July 29, 2021. *Docs. 175, 179.* Defendant also filed a request for a hearing on this motion. *Doc. 181.* Having concluded that the present matter can be decided on the briefing, the request for a hearing is hereby DENIED.

II. **STANDARD OF REVIEW**

Motions for reconsideration are not expressly recognized by the Federal Rules of Civil Procedure. *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.,* 229 F.R.D. 232, 234 (D.N.M. 2005) (citing *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.,* 312 F.3d 1292, 1296 n.3 (10th Cir. 2002)). When a party moves for reconsideration of a final order, that motion is treated as a Rule 59(e) or 60(b) motion, depending on its timing. *See Computerized Thermal Imaging,* 312 F.3d at 1296 n.3. A motion for reconsideration of a non-final (i.e., interlocutory) order is treated as a request for relief under Rule 54(b), which provides that any non-final order "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Price v. Philpot,* 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). Reconsideration of an interlocutory order is a matter of the Court's discretion and warranted when the Court has made an error of fact or of law. *Todd v. Montoya,* 791 F. Supp. 2d 1060, 1062 (D.N.M. 2011) (citing *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000)).

III. **RECONSIDERATION**

In its order granting Plaintiff's motion to compel, the Court made the following

4

pertinent findings:

> (1) Defendant cited no authority, binding or persuasive, to prevent discovery into loss reserves information, *doc. 167* at 4;
>
> (2) Defendant's arguments attacked the reliability and admissibility of this evidence rather than its discoverability, *id.*;
>
> (3) Defendant did not carry its burden of showing that loss reserves settings from September 11, 2019 onward were made in anticipation of litigation, *id.* at 5–6; and
>
> (4) Defendant did not carry its burden of showing that its loss reserves settings constituted communications between attorney and client to which attorney-client privilege would apply, *id.* at 5 n.2.

Defendant's motion for reconsideration provides new caselaw, new evidence and new arguments on the issue of discoverability of their loss reserves settings. Defendant's excuse for failing to present these matters earlier is that the Court did not provide Defendant with sufficient time to brief this issue.

The Court is unsympathetic to Defendant's excuse given the posture of this dispute. Defendant had two opportunities, more than two months apart, to brief this issue. *Docs. 124, 158*. It ought to have been completely foreseeable to Defendant that it would be expected to brief the issue a second time, given that the Court denied Plaintiff's initial motion to compel specifically without prejudice to its being refiled with respect to loss reserves. *See doc. 129*. The Court twice noted the existence of case law supporting discovery into loss reserves. *Id.* at 5–6; *doc. 156* at 1. Of course, Defendant could not have been entirely unaware of the need to cite opposing case law. *See also*

5

D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced."). Yet neither of its responses cite *any* case shielding loss reserves from discovery.[2] *Doc. 124* at 4–6; *Doc. 158* at 4–5.

Furthermore, Defendant's timing argument is flawed. Defendant claims that it had "only two business days" to file its (second) response. *Doc. 170* at 1. This point is based on the fact that the fourth day after Plaintiff filed his motion was a Sunday. However, because the Court's deadline ("within four days…") was a "period … stated in days," the Federal Rules of Civil Procedure automatically extended the deadline until the next business day. *See* Fed. R. Civ. P. 6(a)(1)(C). Consequently, counsel would have had an additional "business" day to file his response, or five calendar days if permitted to work on a weekend.

Moreover, Rule 6 permits a party to seek an extension of a deadline for good cause. Fed. R. Civ. P. 6(b)(1). Defendant asserts that the Court's expedited briefing schedule prevented it from obtaining affidavits necessary to carry its burden of establishing that work-product protection applies. *Doc. 179* at 3. Such a complication is just the sort of argument that might establish good cause for an extension if one were sought. It does not, however, justify revisiting the Court's order after the fact.

Turning to Defendant's substantive arguments, it cites cases finding loss reserves

---

[2] Indeed, Defendant could point to only one apposite case it cited prior to the instant motion. Unfortunately, that cite appeared only in its Motion for Protective Order filed June 22, 2021 (*doc. 163*), which was untimely and wholly rejected by the Court. *See doc. 174*.

irrelevant and thus non-discoverable. *Doc. 170* at 3–4 (citing *Pain Clinic, Inc. v. Baker's Ins. Co.*, 2007 WL 9780346 (E.D. La. Mar. 19, 2007) (unpublished); *Exec. Risk Indem., Inc. v. Cigna Corp.*, 2006 WL 2439733 (Pa. Ct. Com. Pl. Aug. 18, 2006) (unpublished); *In re Couch*, 80 B.R. 512, 516 (S.D. Cal. 1987); *Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652 (3d Cir. 2014) (unpublished); *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 2014 WL 5431223 (N.D. Ind. Oct. 24, 2014) (unpublished); *Union Carbide Corp. v. Travelers Indem. Co.*, 61 F.R.D. 411 (W.D. Pa. 1973); *Indep. Petrochemical v. Aetna Cas. & Surety Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986); and *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1099, 1109–10 (Del. Super. Ct. 1991)). The cases cited by Defendant are no more binding on this Court than the cases cited by Plaintiff. *See doc. 157* at 2 (citing *N. River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411 (E.D. Pa. 1995); *Barela v. Safeco Ins. Co. of Am.*, 2014 WL 11497826 (D.N.M. Aug. 22, 2014) (unpublished); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 644 (D. Kan. 2007); and *Morrison v. Chartis Prop. Cas. Co.*, 2014 WL 840597 (N.D. Okla. Mar. 4, 2014) (unpublished)). While the Court may have been persuaded by these cases had they been presented in Defendant's earlier Responses, they do not establish any clear error of law necessitating revision of the Court's order.

Defendant also cites several cases from this district for the proposition that "newer amendments to the rules of civil procedure require district courts to exercise a greater scrutiny on whether a discovery request seeks relevant information." *Doc. 170*

7

at 3 (citing *Kennicott v. Sandia Corp.*, 327 F.R.D. 454 (D.N.M. 2018); *Ameri v. Geico Gen. Ins. Co.*, 2015 WL 4461212 (D.N.M. July 13, 2015) (unpublished); *EEOC v. Univ. of Phoenix*, 2007 WL 1302578 (D.N.M. Apr. 10, 2007) (unpublished)). The Court agrees that newer amendments to the Federal Rules of Civil Procedure bear on this dispute, specifically the 2015 amendment. Prior to that amendment, Rule 26 read: "Relevant information need not be admissible at the trial if the discovery appears *reasonably calculated to lead to the discovery of admissible evidence*." Fed. R. Civ. P. 26(b)(1) (2014) (emphasis added). In 2015, the drafters revised this sentence as follows: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The drafters explained:

> The phrase ["reasonably calculated to lead to the discovery of admissible evidence"] has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision . . . ." The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

Defendant contends that loss reserves are irrelevant because they have "zero evidentiary value." *Doc. 170* at 3. As the drafters' comments should make clear,

8

"evidentiary value" is not dispositive on the question of discoverability. While it certainly factors into a consideration of proportionality, nothing Defendant has presented on this point demands that the Court reverse its earlier discoverability conclusion.

Finally, the Court turns to Defendant's arguments for work-product protection and attorney-client privilege. In its motion, Defendant largely reiterates the arguments from its response and supplies affidavits in an attempt to carry the burden that it failed to do in the first instance. *Doc. 170* at 5–6, 8–15. For the reasons previously stated, the Court will not exercise its discretion to give Defendant another bite of the apple.

Defendant raises multiple new arguments in its reply. *Doc. 179* at 3–4. First, Defendant argues that the "law of the case" doctrine obligates the Court to extend its prior finding that certain claims notes are protected work product to loss reserves. *Id.* at 3. Second, Defendant attempts to distinguish *Melton Truck Lines, Inc. v. Indem. Ins. Co. of N. Am.*, 2005 WL 8175525 (N.D. Okla. July 14, 2005) (unpublished). *Doc. 179* at 3–4. Third, Defendant argues that the Court should not have relied on *Linville v. Nat'l Indem. Co.*, 2014 WL 12593993 (D.N.M. Sept. 30, 2014) (unpublished), because the court in that case had partially revised its order on reconsideration. *Doc. 179* at 4 (citing *Linville v. Nat'l Indem. Co.*, 2014 WL 12616644 (D.N.M. Dec. 2, 2014)). Fourth and finally, Defendant cites to Federal Rule of Civil Procedure 60(b) and asks this Court to find "any reason that justifies relief." *Doc. 179* at 4. As all of these arguments have been

9

raised for the first time in a reply, they are deemed waived and will not be considered. *See Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007); *Jones v. Colvin*, 647 F. App'x 878, 885 (10th Cir. 2016) (unpublished).

## IV. CLARIFICATION

Defendant also claims to seek "to clarify" the "breadth of the Court's order." *Doc. 170* at 2 n.1. Defendant "seek[s] clarification from the court on reserves for three periods: (a) before September 11, 2019 (prior to demand for an attorney); (b) between September 11, 2019 and January 20, 2020 (The period the Court has ruled was 'in anticipation of litigation', but before Plaintiff filed his lawsuit…); and (c) Following January 20, 2020…." *Doc. 179* at 1-2. As an initial matter, the Court does not consider this request to be one of "clarification." The previous order is clear on its face – it granted Plaintiff's motion to compel "all loss reserves information previously withheld from the claims file" which had been sought by Plaintiff's discovery request. *Doc. 167* at 8. Instead, the Court construes this request as a different angle from which to seek reconsideration. Defendant is asking the Court, if it is unwilling to reconsider its order as a whole, to reconsider compelling production of the loss reserves for certain periods. The Court declines this request.

Defendant is correct that the Court's original order recognized that loss reserve settings can be protected by the work-product doctrine. *See doc. 167* at 5-6. The problem is that the Defendant has the burden of justifying invocation of the doctrine.

10

Defendant failed to do so. As described above, the Court is not persuaded by its arguments that this failure should be excused. The evidence and arguments on this point now presented by Defendant were available to it when it previously responded and should have been made then.

## V. ATTORNEY'S FEES

Having found no basis to reconsider its order granting the motion to compel, the Court finds that the award of attorney's fees is proper for all the reasons previously stated. *See doc. 167* at 7–8. Accordingly, the Court now turns to a consideration of Plaintiff's affidavit of expenses, filed June 28, 2021. *Doc. 169*. Defendant's objections to the amounts claimed, if any, were due July 6, 2021. *See doc. 167* at 8; *see also* Fed. R. Civ. P. 6(a)(1)(C). No objections were filed.

Attorneys submitting fee affidavits to the Court must demonstrate both the reasonableness of the number of hours spent and the reasonableness of the hourly rate claimed. *Ramos v. Lamm*, 713 F.2d 546, 553–55 (10th Cir. 1983); *see also Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679–80 (10th Cir. 2012). An attorney must exercise "billing judgment" and refrain from billing hours to the opposing party that one would not bill to one's client. *Ramos*, 713 F.2d at 553 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). Determining the appropriate billing rate requires considering the prevailing market rate for "lawyers of comparable skill and experience practicing in the area in which the litigation occurs." *Id.* at 555.

Plaintiff's counsel claims 1.5 hours of work at a rate of $300 for himself and 3 hours of work at a rate of $225 for an associate attorney with his firm. *Doc. 169* at 1. The total attorney's fees claimed are $1,125.00, plus gross receipts tax of $88.12, for a total requested award of $1,213.12. *Id.* at 2. The Court finds 4.5 hours a reasonable amount of time to spend drafting a motion to compel and reply brief. As to the reasonableness of the hourly rate, Plaintiff's counsel does not supply any information about the prevailing market rate for insurance litigation, his level of experience, or that of his associate. In the absence of such detail, the Court may properly reduce the amount of the fee award if its own knowledge and experience leads it to conclude that the requested rate is unreasonable. *See Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002). The Court finds that the requested hourly rates of $300 and $225 are within the range generally approved within this district. *See XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730171, at *32 (D.N.M. Apr. 1, 2016) (unpublished) (citing cases approving rates ranging from $150 to $350 according to each attorney's level of experience). Accordingly, the Court finds the requested rates reasonable.

## VI.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Reconsider Court's June 24, 2021, Order to Compel (*doc. 170*) is DENIED.

**IT IS ORDERED** that Defendant shall provide Plaintiff with all loss reserves information previously withheld from the claims file **within seven (7) days** of this

12

Order.

**IT IS FURTHER ORDERED** that Defendant shall pay an expense award of

**$1,213.12** to Plaintiff within **fourteen (14) days** of this Order.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE